D. Victoria Baranetsky (SBN 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (510) 809-3160
Fax: (510) 849-6141
vbaranetsky@revealnews.org

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and PATRICK MICHELS, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, <br><br> Defendant. | Case No. _____ <br><br> **COMPLAINT FOR INJUNCTIVE RELIEF** |

## INTRODUCTION

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief. The Center for Investigative Reporting ("CIR") and Patrick Michels (collectively "Plaintiffs") seek expedited processing and release of agency records requested from Defendant the United States Department of Health and Human Services ("HHS") pertaining to records from the Office of Refugee Resettlement ("ORR") under the Administration for Children and Families ("ACF").

2. In 2017 and 2018, Plaintiffs submitted Freedom of Information Act requests (the "Requests") to ORR seeking disclosure of federal records discussing procedures and contracts related to housing for unaccompanied minors which has been publicly acknowledged.

3. To date, Defendant has failed to issue a response, comply with FOIA's statutory deadlines and has improperly withheld records responsive to the Request.

4. HHS's delay and improper withholding is of particular public concern because the records pertain to a fast-changing matter of great public interest: the federal government's provision of housing and care for children for whom it has assumed responsibility.

5. Plaintiffs now ask the Court for an injunction requiring HHS to promptly release the withheld records.

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1436, and 5 U.S.C. §§ 701–706.

7. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(e) and 1402. Plaintiff CIR has its principal place of business in this district. Plaintiff Patrick Michels is domiciled in this district.

8. Assignment to the Oakland Division is proper pursuant to Local Rule 3-2(c) and (d) because a substantial portion of the events giving rise to this action occurred in Alameda County, where Plaintiff CIR's principal place of business is located and most actions in this case occurred.

## PARTIES

9. Plaintiff CIR is the nation's first nonprofit investigative journalism organization and made the FOIA requests at issue in this case. CIR publishes *Reveal* an online news site at revealnews.org and *Reveal* a weekly public radio show with approximately 2 million listeners a month. CIR has received multiple awards for its reporting. CIR is a nonprofit established under the laws of the State of California, with its primary office in Emeryville, California.

10. Plaintiff Patrick Michels is a staff reporter for *Reveal* and an employee of CIR.

11. Defendant HHS is a department of the executive branch of the U.S. government and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). ORR and ACF are components of HHS. HHS has its headquarters in Washington, D.C. and offices all over the country, including in Oakland

and San Francisco, California.

## FACTUAL BACKGROUND

### HHS and ORR Responsibilities for Unaccompanied Minor Children

12. By law, HHS must provide custody and care of unaccompanied minor children ("UAC"), defined as children who do not have lawful immigration status in the United States, have not attained 18 years of age and have no legal guardian in the United States to provide care and custody. *See* 6 U.S.C. § 279(g)(2).

13. In 2002 under the Homeland Security Act "Congress transferred the care and custody of these children to HHS…to move towards a child welfare-based-model of care for children and away from the adult detention model." ACF, *Fact Sheet* (Jan. 2016), https://www.acf.hhs.gov/sites/default/files/orr/orr_uc_updated_fact_sheet_1416.pdf

14. Six years later, Congress "expanded and redefined HHS's statutory responsibilities" by passing the Trafficking Victims Protection Reauthorization Act which directed "that each child must 'be promptly placed in the least restrictive setting that is in the best interest of the child.'" *Id.* (citing 8 U.S.C. § 1232(b)(2)).

15. Responsible for providing "people in need with critical resources to assist them in becoming integrated members of American society", ORR is the federal office within HHS that houses and cares for many unaccompanied children detained by the United States. ORR, *About Unaccompanied Alien Children's Services* (June 15, 2018), https://bit.ly/2GQtM3K.

16. Undocumented minors apprehended by DHS officials for crossing the U.S. border illegally are immediately transferred to the custody of ORR and temporarily housed in contracted facilities, until the agency can place the minor with a family member or sponsor in the United States. *Id.*; *see also* ORR, *Children Entering the United States Unaccompanied: Section 2* (Jan. 30, 2015), https://bit.ly/2JYxZZs.

17. According to ORR's website, the particular circumstances of these children make them especially vulnerable. The "age of these individuals, their separation from parents and relatives, and the hazardous journey they take make unaccompanied alien children especially vulnerable to human trafficking, exploitation and abuse." ORR, *About Unaccompanied Alien*

*Children's Services, supra.*

18. For this reason, it is especially important "[t]hese care provider facilities are state licensed *and must meet* ORR requirements to ensure a high level of quality of care…[as t]hey provide a continuum of care for children, including foster care, group homes, shelter, staff secure, secure, and residential treatment centers." *Id.* (emphasis added).

19. ORR's requirements for the care provider facilities are in part set out in various cooperative agreements, grant agreements, and contracts. *See id.* (stating "[t]he care providers operate under cooperative agreements and contracts, and provide children with classroom education, health care, socialization/recreation, vocational training, mental health services, family reunification, access to legal services, and case management.")

### Increase of Unaccompanied Minor Children In ORR's Custody

20. In 2017, pursuant to the Trump Administration's new policies, ICE began arresting and detaining an increasing number of unaccompanied minor children for being suspected of alleged gang membership and referring them to ORR where they are detained in "some of the most restrictive detention facilities available for juveniles." Anjali Tsui, *In Crackdown on MS-13, a New Detention Policy Raises Alarms*, FRONTLINE, Feb. 18, 2018, https://to.pbs.org/2EFw59r.

21. Based on interviews and documents published by the agency, it appears the network of ORR shelters is quickly expanding to handle this influx of unaccompanied minors. *See, e.g.*, ORR, J&A UNDER FAR SUBPART 6.3 – JUSTIFICATION FOR OTHER THAN FULL AND OPEN COMPETITION, *available at* https://bit.ly/2K1s4mH ("[i]n order to meet the increase in referrals of unaccompanied alien children (UAC) with violent criminal background and gang affiliation, Office of Refugee Resettlement (ORR) needs to procure secure bed capacity needs…to accommodate this influx that has caused the current facilities to experience over capacity issues.")

22. For instance, ORR announced a contract award of a grant for $1,768,571 "for the immediate need for additional capacity of shelter services to accommodate the increasing number of UC referred by the Department of Homeland Security (DHS) into ORR care." ORR, Announcement of the Award of One Single Source Expansion Supplement Grant Within the Office of Refugee Resettlement's Unaccompanied Children's Program, 82 Fed. Reg. 14,903 (Mar. 23, 2017),

https://bit.ly/2K3L3wP (stating the "increase in the UC population necessitates the need for expansion"); *see also* ORR, Announcement of the Award of 48 Single-Source Low-Cost Extension supplement Grants Within the Office of Refugee Resettlement's Unaccompanied Alien Children's (UAC) Program, 82 Fed. Reg. 26,806 (June. 9, 2017), https://bit.ly/2MMXieO (announcing "the award of 48 single source low-cost extension supplement grants for a total of $110,480,457 under the Unaccompanied Alien Children's (UAC) Program").

23. Grant announcements posted publicly on the ACF Funding Opportunity Announcements website also confirm these circumstances. *See, e.g.,* ACF Home Study and Post Release Services for Unaccompanied Children Funding Opportunity, No. HHS-2017-ACF-ORR-ZU-1139 (May 26, 2016), https://bit.ly/2MkTD79; ACF, Residential (Long Term Foster Care) Services for Unaccompanied Children Funding Opportunity, No. HHS-2017-ACF-ORR-ZU-1135 (June 30, 2016), https://bit.ly/2tw2ye8; ACF, Residential (Secure) Services for Unaccompanied Alien Children Funding Opportunity, No. HHS-2017-ACF-ORR-ZU-1134 (May 31, 2016), https://bit.ly/2ltS3Ej.

24. ORR has also published an explanation of one contract expanding ORR housing in Virginia. ORR, J&A UNDER FAR SUBPART 6.3, *supra* (stating "In order to meet the increase in referrals of unaccompanied alien children with violent criminal background and gang affiliation, Office of Refugee Resettlement (ORR) needs to procure secure bed capacity....").

25. News organizations have long been covering the expansion of this program. For instance in 2014, *Mother Jones* published a map of these shelters made from information collected through a 2014 FOIA request. Ian Gordon, *This is Where The Government Houses the Tens of Thousands of Kinds Who Get Caught Crossing the Border*, MOTHER JONES, Jun. 3, 2014, https://bit.ly/2Mc515Y. More recently, *The Washington Post* covered the influx and capacity for these shelters. Colby Itkowitz, *The Health 202: The Small HHS Agency Detaining Migrant Kids Isn't Meant For the Task*, THE WASHINGTON POST, June 20, 2018, https://wapo.st/2yGsZnc.

26. CIR consistently reported on this and related issues of public importance. Aura Bogado, Patrick Michels, Vanessa Swales and Edgar Walters, *Migrant Children Sent to Shelters With Histories of Abuse Allegations*, REVEAL, June 20, 2018, https://bit.ly/2thYTBt; Reveal and

PRX, *Reveal Answers Your Questions About Immigration*, REVEAL, June 9, 2018, https://bit.ly/2JwLyPu; Patrick Michels, *Federal Agency Refers Girls to Counselors Picked By Anti-Abortion Group*, REVEAL, Nov. 21, 2017, https://bit.ly/2AiJA0l.

27. The public need for disclosure of documents discussing these contracts is compelling as the disclosure of these contracts would reveal how public funds are being allocated and would reveal what requirements contractors are held to and if they are complying with federal mandates in caring for UACs while under government supervision.

## The Requests

28. On November 10, 2017 Mr. Michels submitted a FOIA request to ORR, HHS seeking copies of currently active contracts for housing unaccompanied minors. A true and correct copy of that letter is attached as Exhibit A.

29. More specifically, it requested:

   a. The Memorandum of Agreement signed by DHS and HHS regarding unaccompanied children, signed on February 22, 2016.

   b. Copies of currently active contracts between ORR and grantees for Residential (Secure) Services for Unaccompanied Alien Children; Residential (Staff Secure) Services for Unaccompanied Alien Children; Residential (Shelter) Services for Unaccompanied Children; Residential (Long Term Foster Care) Services for Unaccompanied Children; Residential (Therapeutic) Services for Unaccompanied Alien Children.

   c. Copies of religious exemption requests from recipients of the above-mentioned grants, and records indicating whether those requests were approved or denied, dated from May 31, 2016, to November 10, 2017.

   d. Records indicating the number of unaccompanied minors referred to ORR by date range (weekly, monthly or quarterly), and the name of the referring agency, from January 1, 2016, to November 10, 2017.

   e. Records sufficient to show the average time in ORR custody for unaccompanied

1 |     minors from January 1, 2016, to November 10, 2017.

2 |   f. Copies of training materials delivered received by ORR from the Department of Homeland Security concerning methods of identifying members of the gang MS-13.

  g. Reports, memos or presentations resulting from ORR's review of unaccompanied minors in its secure and staff secure facilities on June 9, 2017, concerning potential gang involvement.

See Ex. A.

30. Plaintiffs sought a waiver of search and review fees on the grounds that the CIR qualifies as a "representative of the news media" and that the records are not sought for commercial use.  5 U.S.C. § 552(a)(4)(A)(ii) and (iii).

31. Plaintiffs sought expedited processing on the grounds that there is a "compelling need" for these records because the information requested is urgently needed by an organization primarily engaged in disseminating information in order to inform the public about actual or alleged federal government activity.  5 U.S.C. § 522(a)(6)(E).

32. Plaintiff Mr. Michels certified that all statements were true to the best of his knowledge.

33. On February 7, 2018, Mr. Michels sent an email ACF's FOIA office and requested an update on the status of his request.  A true and correct copy of that letter is attached as Exhibit B.

34. On February 8, 2018, ACF sent an acknowledgement letter and assigned the case number 18-F-0050.  A true and correct copy of that letter is attached as Exhibit C.

35. Mr. Michels did not receive any further response from the agency.

36. On March 29, 2018, Mr. Michels sent a new request, referencing the original request and additionally requesting more copies of contracts related to ORR homes.  A true and correct copy of that letter is attached as Exhibit D.

37. More specifically, it requested:

  a. Copies of currently active contracts between ORR and grantees for Home Study and Post Release Services for Unaccompanied Children.

  b. Copies of religious exemption requests from recipients of the above-mentioned

-7-
COMPLAINT FOR INJUNCTIVE RELIEF

grants, and records indicating whether those requests were approved or denied, dated from November 10, 2017, to the date at which this request is processed.

c. Records indicating the number of unaccompanied minors referred to ORR by date range (weekly, monthly or quarterly), and the name of the referring agency, from November 10, 2017, to the date at which this request is processed.

d. Records sufficient to show the average time in ORR custody for unaccompanied minors from November 10, 2017, to the date at which this request is processed.

See Ex. D.

38. Plaintiffs sought a waiver of search and review fees on the grounds that the CIR qualifies as a "representative of the news media" and that the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii) and (iii).

39. Plaintiffs sought expedited processing on the grounds that there is a "compelling need" for these records because the information requested is urgently needed by an organization primarily engaged in disseminating information in order to inform the public about actual or alleged federal government activity. 5 U.S.C. § 522(a)(6)(E).

40. Plaintiff Mr. Michels certified that all statements were true to the best of his knowledge.

41. In April 2018, a FOIA officer contacted Mr. Michels to discuss the second request over the phone. A true and correct copy of that correspondence is attached as Exhibit E. On the call, when Mr. Michels asked for an update on the contracts portion of the request, the FOIA Officer told him he could call a supervisor at the FOIA office. Mr. Michels promptly called and left a message, but never heard back.

42. To date, Plaintiffs have not received any further response from the agency.

43. More than 20 working days have passed since Plaintiffs submitted both Requests.

44. HHS has failed to comply with FOIA, 5 U.S.C. § 552(a)(6)(A)(i), requiring that an agency make a determination within the 20 business days.

45. Plaintiffs now seeks injunctive relief.

## CAUSE OF ACTION

### Violation of Freedom of Information Act

46. Plaintiffs repeat and reallege paragraphs 1–28.

47. HHS is subject to FOIA and must therefore release in response to a FOIA request any disclosable records in its possession and provide a lawful reason for withholding any materials as to which it is claiming an exemption.

48. HHS has no lawful basis for declining to release the records requested by Plaintiffs under FOIA.

49. HHS has failed to expedite processing.

50. HHS has failed to act on Plaintiffs' request within the 20 business days required by FOIA. *See* 5 U.S.C. § 552(a)(6)(A)(i). Accordingly, Plaintiffs are deemed to have exhausted their administrative remedies under FOIA.

51. Plaintiffs are entitled to declaratory and injunctive relief compelling the release and disclosure of the requested records.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs pray that this Court:

1. Declare that Defendant HHS violated FOIA by failing to provide requested records in response to Plaintiffs' FOIA requests and failing to notify Plaintiffs of any determination;

2. Declare that the documents sought by their FOIA request, as described in the foregoing paragraphs, are public under 5 U.S.C. § 552 and must be disclosed;

3. Order Defendant HHS to provide the requested documents to Plaintiffs within 20 business days of the Court's order;

4. Award Plaintiffs the costs of this proceeding, including reasonable attorneys' fees, as expressly permitted by FOIA; and

5. Grant Plaintiffs such other and further relief as this Court may deem just and proper.

DATED: June 25, 2018

Respectfully submitted,

By: /s/
D. Victoria Baranetsky (SBN 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (510) 809-3160
Email: vbaranetsky@revealnews.org

Attorney for Plaintiffs